### GEORGE W. RUSSELL v. TOLEDO (CITY).

1. DUTY OF CITIES TO KEEP STREETS FREE FROM NUISANCE.

    The duty enjoined by statute on municipal corporations, to keep their public ways open, in repair and free from nuisance, is ministerial and mandatory, and requires the removal from such ways of all dangerous defects and obstructions, from whatever cause arising, when brought to the notice of the corporation.

2. NEGLIGENCE IN REMOVING ICE AND SNOW.

    While the mere fact that a sidewalk is slippery will not render a municipal corporation liable for injuries occasioned thereby, yet where there are accumulations of snow and ice, dangerous in themselves or dangerous by reason of the manner in which the walk is constructed or laid, a city may be liable if it has been negligent in not removing the same.

3. NEGLIGENCE IS QUESTION OF FACT, NOT OF LAW.

    The question whether the city has been negligent in not removing ice and snow accumulated upon its sidewalks, is one of fact, to be determined by the jury; and particularly in a case where the location and condition of the walk are such as to facilitate dangerous accumulations of snow and ice.

4. EVIDENCE OF OTHER ACCIDENTS ADMISSIBLE.

    In an action against a city for damages for injury caused by falling upon an icy sidewalk, evidence of other accidents of a similar nature happening at the same place on account of the same ice, is competent, as tending to show the dangerous character of sidewalk in its unguarded condition; and that its dangerous character was brought to the notice of the city authorities.

ERROR to the Court of Common Pleas of Lucas county.

KING, J. (orally.)

Russell brought a suit against the city of Toledo to recover damages for an injury received by him, by falling on a sidewalk located on one of the streets of this city, which he alleged was covered by an accumulation of ice and in passing over which he fell and broke his arm, about February 11, 1897. And he alleged that this sidewalk had remained in the condition it was for about two months; that the land

on the wesi side of the sidewalk is higher than the sidewalk, and slopes towards it; and that the snow had accumulated upon this walk, and had become beaten down hard and frozen, making a rough, uneven, slippery accumulation, forming an obstruction to travel upon it. That the plaintiff, while proceeding home upon the evening of February 11, without any knowledge of the obstruction or of the condition of the street or sidewalk at that point, walked upon and over this walk, slipped, fell and broke his arm.

The case was submitted to a jury. and tried upon the evidence of the plaintiff, which tended to show substantially the allegations contained in the petition. The evidence, as to the duration of this accumulation of ice and snow, varied from ten days to two months. The evidence showed that the land on the west side of the walk was higher; that is, it sloped towards the sidewalk considerably; that water from. the surface of the land would run upon the sidewalk at this point; that from the peculiar location of the streets, the rise of the land to the west and. north, and the situation of the buildings, the snow had a tendency to drift upon this part of the street and walk; that the street at that point was not very wide, and there are two street car tracks upon it, and the snow sweepers of the street car lines would throw snow upon it, and that this snow had frozen, and had been traveled upon and beaten and that the sun had warmed the top, and that the nights were cool and freezing; the rains had descended and there had been colder. weather following, that had made ice; that this accumulation of snow and ice, at the point in question, rounded over from four to seven inches in thickness in the center, sloping off thinner as it approached the edge of the walk; that the plaintiff visited a house near the scene of this accident on some business on the evening of February 11, and between 6 and 8 o'clock, as fixed by the different witnesses, and after the street lamps had been lighted, he left the place to go home, and he went towards the union depot on this street and along this sidewalk; that he had not traveled over this street during the past winter .or at any other time while in such condition; that there had been a light fall of snow during the day, perhaps of half an inch; that as he walked over this place, without knowing or seeing its condition, he fell and broke his arm.

At the conclusion of plaintiff's evidence, on motion of defendant's counsel, the court instructed the jury to return a verdict for the city. It is with that ruling of the court we have to do in this error proceeding.

It is contended, on the part of the city, substantially as held by the court below, that these facts were not such as would enable the jury to find that the city had been negligent in its care of the street and sidewalk at 'this point, and that the city could not be liable for its negligence in failing to clean from the sidewalks of the city any accumulation of ice or snow precipitated there by natural causes only; in other words, if the city had not, by its negligence in the construction of the walk, or by allowing some artificial accumulation of ice and snow to precipitate itself upon the walk at that point, it could not be made liable for negligence. That seems to have been 'the view taken by the learned judge of the court below, in a somewhat brief discussion that he made of the matter, as appears in the bill of exceptions, preliminary to his instruction to the jury.

The Supreme Court, in Schaefler v. Sandusky, 33 Ohio St., 246, held that one who voluntarily goes upon any icy obstruction upon the sidewalk, that he sees and knows about, when he could have avoided it by going around it, is himself guilty of negligence which will preclude his recovery from the city. And that remained as the principal ice case of the state until the decision of Chase v. Cleveland, 44 Ohio St., 505. That case, it will be noticed, was a demurrer to the petition, and the court, following the well settled rule for the construction of pleadings, that the allegations of the pleader must be taken most strongly against him, hold that the petition did not state a cause of action. It was, in that case, alleged that the city had negligently suffered ice and snow to accumulate upon the sidewalk so as to become dangerous for persons passing along the same, and that this had remained for some days. The Supreme Court, in passing upon it, say, that may have been not more than two days. There was no allegation that the street was one much frequented or traveled, and it may have been one of the extreme outlying streets, having little or no travel upon it, and few or no inhabitants living upon it. They say:

"Municipal corporations are not insurers of the safety of their public ways, or of the lives and limbs of pedestrians. The law provides that such corporations shall have the care, supervision and control of the streets, and shall cause them to be kept open and in repair and free from nuisance. This requires a reasonable vigilance, in view of all the surroundings, and does not exact that which is impracticable. When the authorities have done that which is reasonable in this regard, they have discharged the entire obligation imposed by the law. They are not bound to use all possible vigilance in inspection or in obtaining information."

They say, in closing the opinion:

"We are content to rest this branch of the case, as to the duty of the city yregarding removal of ice from the sidewalks within the municipality, on the ground tersely put in substance by counsel for defendant, that the law exacts of municipalities only that which is practicable and reasonable in regard to keeping streets open, in repair and free from nuisance; that the duty of the municipality, under the statute, must be interpreted upon a reasonable basis in reference to the actual condition of affairs; that impracticable things are not required, and, that to hold the city liable, under he allegations of this petition, would be to require that which is impracticable, and to impose an onerous and unreasonable burden upon it.

"Whether or not a case might be made, growing out of a peculiar situation of walk at a greatly frequented place, upon one of the most public streets, wherein the city mightbe held for damages arising from slipperiness of ice alone, we need not here consider. Such a case has not been made."

Then in Village v. Naef, 54 Ohio St., 529, the court was called to pass upon instructions given by the trial judge to the jury, and it was held that this charge was proper:

"If there was a ridge of ice partly across the sidewalk, in plain sight of a person attempting to cross it in daylight, it would be negligence in such person to attempt to cross it if he had any other way to proceed that was not dangerous, within the bounds of the sidewalk,

and under such circumstances a plaintiff thus making the attempt to cross can not recover."

The syllabus in that case is:

"One who goes voluntarily upon an accumulation of ice on a walk of a village cannot maintain an action against such village for a personal injury resulting to him, if the source of danger is plainly visible."

That case, has simply added a new element to the obligation of the plaintiff to exercise care in crossing a dangerous place upon the sidewalk, and added a new qualification to the rule as laid down in Schaefler v. Sandusky, supra. Beyond that it has really no force as an authority. In the opinion of the court appears this sentence, which seems to give to counsel for the city ground for thinking that the court might have held that a city could not be held responsible or made liable for injuries resulting from an accumulation of ice and snow produced by natural causes: "Whether the village was guilty of actionable negligence may well be doubted, in view of Chase v. Cleveland, 44 Ohio St., 505." But that seems to be the construction of the learned judge who read that opinion.

The Supreme Court have recently decided a case, the syllabus only being obtainable, upon the question of the liability of a municipal corporation, Circleville v. Sohn, 59 Ohio St., 285. The first proposition of that syllabus would include a case like the one before the court, or within its terms:

"The duty enjoined by statute on municipal corporations to keep their public ways open in repair and free from nuisance, is ministerial and mandatory, and required the removal from such ways of all dangerous defects and obstructions, from whatever cause arising, when brought to the notice of the corporation."

So we do not think the Supreme Court of Ohio has gone so far as to say that the city shall not be held liable for its negligence to use reasonable care to remove ice and snow from the sidewalks.

If we turn from the state of Ohio to authorities in the other states, they seem to be almost unbroken and unanimous upon that point. The case, that might be called a leading case, at any rate an important one, is found in 20 Neb., 288, in which the court held:

"The question whether a sidewalk was defective or in an unsafe condition is one of fact and not of law. While the courts generally held that the mere fact that a sidewalk is slippery, will not render the corporation liable for an injury occasioned to a person by falling on such walk in consequence of such condition of the walk, yet when there are accumulations of snow and ice on the sidewalk the city may be liable if it has been guilty of negligence in not removing the same."

They cite with approval, a case from 24 Wis., 270; 97 Mass., 268, and another case from the same report, page 272; 10 Cush., 260; 8 Allen, 136; 10 Allen, 147; 17 How. (U. S.), 161; 37 Conn., 414. Perhaps other cases are cited, but these cases I have examined, and all support the doctrines of the case in 20 Neb., 288. I only want to refer to one, that in 17 Howard, 101. This action arose in the state of Rhode Island, where there is a statute providing that "all highways, townways and causeways, lying and being within the bounds of any town shall be kept in repair and amended, from time to time, so that the same may be convenient and safe for travelers, with their teams, etc." There are other sections, among which is the thirteenth, which provides that if the town shall neglect to keep in good repair its high-

ways and bridges, she shall be liable to indictment, and "shall also be liable to all persons who may in any wise suffer injury to their persons or property by reason of any such neglect." The court say in conclusion:

"In the case also of obstructions from snow, the sidewalks may frequently require its removal, so as to make a safe and convenient passage for the pedestrian, when, at the same time, the treading of it down in the street would answer the purpose for the traveler with his team. The nature and extent of the repairs must necessarily depend upon their location and uses; those thronged with travelers may require much greater attention than others less frequented.

"The just rule of responsibility, and the one, we think, prescribed by the statute, whether the obstruction be by snow or by any other material, is the removal or abatement so as to render the highway, street, or sidewalk, at all times safe and convenient, regard being had to its locality and uses."

In addition to the cases which I have said were referred to in 20 Neb., 228, supra, are these, which support the same principle without qualification: 54 Wis., 528; 50 Wis., 242; 40 Mo., 176; 32 Ia., 234; 61 N. J., 506; 130 N. Y., 188; 77 N. Y., 100; 186 Pa., 77; 89 Mo., 208. There are other cases, but these ought to be sufficient to show that the general doctrine of the authorities is, that the question whether the city was negligent in not removing ice and snow accumulated upon a walk is one of fact, to be determined by the jury, and especially in a case like the one before the court and we come to the conclusion that the court below erred in not submitting that question to the jury in this case, upon the facts which are presented here by this record.

As this case is to be reversed and remanded for a new trial, I wish to refer to another question. On the trial witnesses were called and examined as to when other persons fell at this place, and considerable testimony of that kind was offered. It does not appear from the record whether all of it was ruled out or not, but some of it was. Probably the court followed the same rule as to the balance; but these questions appear on pages 7, 14 and 18 of the record—and I shall say generall about them, they were directed to the inquiry whether the witnesses had seen other persons, within a reasonable length of time preceding the plaintiff's accident, in passing over this walk, fall on account of the slipperiness of the ice. We think that that testimony was competent to be given in evidence. The principal case upon that point is found in 107 U. S., 519, although there are many more. A member of the police force testified that he saw the deceased fell upon the sdewalk and went to his assistance.

"He was asked, after testifying to the accident, whether, while he was on his beat, other accidents had happened at that place. The court allowed the question against the objection of the city's counsel, for the purpose of showing the condition of the street, and the liability of other persons to fall there. The witness answered that he had seen persons stumble over there. He remembered sending home in a hack a woman who had fallen there, and had seen as many as five persons fall there.

"The admission of this testimony is now urged as error, the point of the objection being that it tended to introduce collateral issues, and thus mislead the jury from the matter directly in controversy. Were such the case, the objection would be tenable; but no dispute was made

as to these accidents, no question was raised as to the extent of the injuries received, .no point was made upon them, no recovery was sought by reason of them, nor any increase of damages. They were proved simply as circumstances which, with other evidence, tended to show the dangerous character of the sidewalk in its unguarded condition. The frequency of accidents at a particular place would seem to be good evidence to that effect. Persons are not wont to seek such place, and do not willingly fall into them. Here the character of the place was one of the subjects of inquiry to which attention was called by the nature of the action and the pleadings, and the defendant should have been prepared to show its real character in the face of any proof bearing on that subject.

"Besides this, as publicity was necessarily given to the accidents, they also tended to show that the dangerous character of the locality was brought to the attention of the city authorities."

They also cite a case from 11 Hun., 217, which was affirmed in 74 N. Y., 603. The same doctrine was held in 42 Ill., 169; and many other cases are cited in this connection. The case of Brewing Co., v. Bauer, 50 Ohio St., 560 is to the same effect, which went up from Toledo.

The case will be remanded for a new trial.

*Chittenden* & *Chittenden,* for plaintiff in error.

*Wm. H. Mills,* City Solicitor, for defendant in error.